IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DEANNA SHELTON and
CHLOE JENNINGS,

        **Plaintiffs,**

v.

CITY OF LOCUST GROVE,
OKLAHOMA, a Municipal Corporation;
JASON WILLIAMS, in his official and
individual capacity;
CLAY HALL, in his official and individual
capacity; and
BRETT RUSSELL, in his official and
individual capacity,

        **Defendants.**

Case No. 23-CV-274-JFH-JFJ

## ORDER AND OPINION

Before the Court is a motion to dismiss ("Motion") filed by Defendants City of Locust Grove, Oklahoma, and Jason Williams, Clay Hall, and Brett Russell, in their individual and official capacities (together, "Defendants"). Dkt. No. 22. Defendants assert that the Second Amended Complaint [Dkt. No. 20] must be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, the Motion is GRANTED.

### PROCEDURAL BACKGROUND

On July 3, 2023, Plaintiff Deanna Shelton ("Plaintiff Shelton") filed her original complaint thereby initiating this action. Dkt. No. 2. On August 18, 2023, a first amended complaint was filed adding Plaintiff Chloe Jennings ("Plaintiff Jennings"). Dkt. No. 8. On September 1, 2023, Defendants filed a motion to dismiss for failure to state a claim. Dkt. No. 12. In light of the motion to dismiss, the Court invited Plaintiffs to file a second amended complaint if they so desired. Dkt. No. 15. Plaintiffs filed their Second Amended Complaint on September 19, 2023. Dkt. No. 20.

The Second Amended Complaint asserts the following claims: 1) 42 U.S.C. § 1983 Fourth Amendment Violation as against all Defendants; 2) Intentional Infliction of Emotional Distress as against Defendants Hall, Russell, and Williams; 3) Intentional Infliction of Emotional Distress as against Defendant Hall; 4) Negligence/Conversion as against Defendant City of Locust Grove; and 5) Temporary and Permanent Injunction as against all Defendants. *Id*.

Defendants, again, filed a motion to dismiss for failure to state a claim. Dkt. No. 22. Plaintiffs filed a response brief on October 30, 2023 [Dkt. No. 25] and Defendants filed a reply brief on November 9, 2023 [Dkt. No. 28]. The Motion is now ripe for the Court's consideration.

**FACTUAL BACKGROUND**

Taking Plaintiffs' allegations as true and construing them in the light most favorable to them, as it must at this stage, the Court briefly recounts Plaintiffs' allegations. In 2021, Plaintiff Shelton's male dog, Titan, and Plaintiff Jennings' female dog, Zo, were bred and, as a result, the dogs Sancho and Zeke were born in August of 2021. *Id*. at 4. At all times relevant to Plaintiffs' claims, Sancho and Zeke were owned by and in the possession of Plaintiff Shelton "with the consent of [Plaintiff] Jennings." *Id*.

On August 11, 2022, at about 9:00 p.m., Plaintiff Shelton drove down the street to her home and saw Locust Grove Police Department Officers Clay Hall ("Officer Hall") and Brett Russell ("Officer Russell") in the front yard of her home speaking with Plaintiff Jennings. Dkt. No. 20 at 5. Pet dogs Sancho and Zeke were also present in the front yard. *Id*. Before Plaintiff Shelton joined them, Officer Hall and Officer Russell asked Defendant Jennings if they could take the dogs to the pound. *Id*. Defendant Jennings said yes but specified that they could only take them if they were "taking them to the pound in Pryor." *Id*. Promising that he would, Officer Hall responded

2

that they "would take the dogs to the City of Pryor pound and try to find them a home." Dkt. No. 20 at 5.

Once Plaintiff Shelton arrived, Officer Hall and Officer Russell advised her that she would be issued tickets for her dogs being "at large" because they were not contained in her fenced backyard. *Id*. Plaintiff Shelton then called Locust Grove Mayor Jason Williams ("Mayor Williams") and requested his presence at her home. *Id*. Mayor Williams arrived about five (5) minutes later. *Id*. Again, Officer Hall and Officer Russell advised Plaintiff Shelton that she would be issued tickets for her dogs being at large. Dkt. No. 20 at 5. Plaintiff Shelton advised the officers that she could not afford to pay a fine if she were ticketed. *Id*. Officer Hall and Officer Russell then advised Plaintiff Shelton that she had two options: 1) be ticketed for Sancho and Zeke being at large, or 2) claim that Sancho and Zeke were strays and abandon them to the officers. *Id*. Because she could not afford to pay a fine if ticketed, Plaintiff Shelton felt that she had no other choice but to abandon the dogs. *Id*. It was Plaintiff Shelton's expectation that any abandonment of Sancho and Zeke was only temporary and that they would be held at the dog pound in Pryor, Oklahoma until she "could figure out what to do." Dkt. No. 20 at 5.

Once Plaintiff Shelton advised that she was abandoning the dogs, Officer Hall and Officer Russell loaded Sancho and Zeke into the animal control truck that Officer Hall was driving. *Id*. at 6. At that time, Mayor Williams directed that Sancho and Zeke be "put down, or euthanized." *Id*.

Nine (9) days later, on August 20, 2022, Plaintiff Shelton opened her back door and discovered Sancho in her backyard. *Id*. Sancho had a wound at the top of his skull, an injured right eye, a swollen face, and was covered in mud. Dkt. No. 20 at 6. Plaintiff Shelton brought Sancho inside her home and called the police. *Id*. Officer Hall arrived shortly thereafter. *Id*. Upon seeing Sancho, Officer Hall explained that after leaving with Sancho and Zeke on August

11, he and Officer Russell "shot the dogs" and "threw them out." *Id*. Officer Hall admitted his surprise that Sancho had made it back to Plaintiff Shelton's home because he had believed that both dogs were dead. Dkt. No. 20 at 7. Officer Hall then attempted to take Sancho, indicating that he was going to shoot him again. *Id*. Plaintiff Shelton refused to turn Sancho over to Officer Hall. *Id*.

## STANDARD

In considering a motion under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 562. Although decided within an antitrust context, *Twombly* stated the pleadings standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs,* 263 F.3d 1151, 1154–55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are

insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991).

When a document is referred to in a complaint and is central to a plaintiff's claim, the court has discretion to consider the document as part of the pleadings. *See, e.g., Prager v. LaFaver*, 180 F.3d 1185, 1188–89 (10th Cir. 1999). In *Prager*, the plaintiff referred to certain documents that were essential to his claim, but did not attach them to his complaint. The defendant then attached these documents to his 12(b)(6) motion, and argued that the court must consider them part of the pleadings in deciding his motion. *Id*. at 1188. The court concluded that as long as the document in question is referred to in the plaintiff's complaint and is central to his claim, the district court has discretion to consider it part of the pleadings in a 12(b)(6) motion. *Id*. at 1189.

Here, Plaintiffs have referred to and quoted from portions of the police report written by Officer Hall regarding the incident at issue. *See* Dkt. No. 20 at 6. Although the report is not attached to the Second Amended Complaint, Defendants attached the report to their Motion. Dkt. No. 22-1. The Court finds, as evidenced by Plaintiffs' reliance on the report in the Second Amended Complaint, that the police report is central to Plaintiffs' claims. The Court will therefore exercise its discretion to consider it part of the pleadings in deciding Defendants' Motion.

## ARGUMENT AND AUTHORITY

I. *Standing*

Defendants argue that Plaintiffs lack standing to bring the claims set forth in the Second Amended Complaint. "Each plaintiff must have standing to seek each form of relief in each claim." *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007). To satisfy constitutional standing requirements, a plaintiff must demonstrate the presence of three elements:

> (1) injury in fact—meaning the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or

> imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct—meaning that the injury fairly can be traced to the challenged action of the defendant; and (3) a likelihood that the injury will be redressed by a favorable decision—meaning that the prospect of obtaining relief from . . . a favorable ruling is not too speculative.

*Bd. of Cnty. Commissioners of Sweetwater Cnty. v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (internal quotations and citations omitted).  The Court will address the standing of each Plaintiff in turn.

    *a. Plaintiff Jennings*

Defendants argue that Plaintiff Jennings lacks standing to bring the claims in the Second Amended Complaint because she had no ownership interest whatsoever in Sancho and Zeke.  Dkt. No. 22 at 5-6.  In Plaintiffs' response, they argue that whether Sancho and Zeke were owned jointly by Plaintiff Shelton and Plaintiff Jennings, or whether Sancho and Zeke were "owned exclusively by one of them to the exclusion of the other, is not an issue that can be decided in a motion to dismiss."  Dkt. No. 25 at 2-3.

It is true that the Court cannot resolve contested issues of material fact when deciding a motion to dismiss.  Fed. R. Civ. P. 12(b)(6).  However, the issue of ownership of Sancho and Zeke is not a contested issue of fact.  The Second Amended Complaint makes clear that Sancho and Zeke were "fully owned by and in the possession of Plaintiff Shelton . . . at all times relevant to the claims raised herein."  Dkt. No. 20 at 4.  Regarding Plaintiff Jennings' involvement, the Second Amended Complaint states that Plaintiff Jennings consented to Plaintiff Shelton's ownership of Sancho and Zeke and suggests that Plaintiff Jennings "*may* have had some right, title and interest in the dogs by virtue of her dog being the mother of Sancho and Zeke."  *Id.* (emphasis added).  Plaintiffs' averments in this regard appear to be nothing more than labels and conclusions, and do not rise to anything more than speculation.  For this reason, the Court finds that Plaintiff Jennings

6

lacks standing and, therefore, has failed to state a claim under any theory of relief in the Second Amended Complaint. Accordingly, the Motion is granted as to Plaintiff Jennings.

### b. *Plaintiff Shelton*

Defendants likewise argue that Plaintiff Shelton lacks standing to bring any of the claims asserted in the Second Amended Complaint. Dkt. No. 22 at 6. Specifically, Defendants argue that Plaintiff Shelton relinquished her ownership of Sancho and Zeke when she abandoned them to Officer Hall and Officer Russell and, thereby, divested herself of any cognizable theory of relief. *Id*. at 14. Plaintiffs concede that Plaintiff Shelton abandoned the dogs, but argue that her abandonment does not divest her of standing for two reasons. First, Plaintiffs argue that Plaintiff Shelton's abandonment was not intended to be a full and permanent abandonment of the dogs, but rather a temporary abandonment while she "figure[d] out what to do." Dkt. No. 20 at 5. Next, Plaintiffs argue that Plaintiff Shelton's abandonment was involuntary because she was forced to abandon the dogs "under duress and was coerced into doing so under the threat of falsely charging her with a city misdemeanor if she refused to do so." Dkt. No. 25 at 9. For these reasons, Plaintiffs argue that Plaintiff Shelton still has standing to bring the claims in the Second Amended Complaint despite the abandonment. *Id*.

Whether Plaintiff Shelton has standing hinges on whether she abandoned Sancho and Zeke prior to their taking. "Abandonment is akin to the issue of standing because [one] lacks standing to complain of an illegal search [or seizure] . . . of property which has been abandoned." *United States v. Garzon*, 119 F.3d 1446, 1449 (10th Cir. 1997). Abandonment may be inferred from words, acts, and other objective facts. *United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993). However, there is also a subjective component to abandonment. *Garzon*, 119 F.3d at 1449. For example, while a suspect running from the police may throw his contraband in the

7

bushes, thereby physically abandoning his property, he likely subjectively intends to retrieve the contraband once the police are no longer on his trail. *See id*. at 1226-27. But, regardless of subjective intent, "one who disclaims ownership is likely to be found to have abandoned ownership." *United States v. Denny*, 441 F.3d 1220, 1227 (10th Cir. 2006). Indeed, the Tenth Circuit has noted that it had "not found a case in which a[n individual's] express disclaimer of ownership in response to a lawful police inquiry did not constitute abandonment of property in the Fourth Amendment context." *Id*. In other words, when one affirmatively denies ownership of personal property, she too voluntarily relinquishes any reasonable expectation of privacy in that property under the Fourth Amendment. *Id*. at 1228; *see also United States v. Burbage*, 365 F.3d 1174 (10th Cir. 2004) ("To deny ownership is to announce to the world, 'you want it, you can have it, as far as I'm concerned.'"). While subjective intent is a question of fact, "whether [an individual] retained an objectively reasonable expectation of privacy in the property that society will recognize is a question of law . . . ." *Id*. at 1227 (quoting *Garzon*, 119 F.3d at 1449).

While Plaintiff Shelton concedes that she physically abandoned the dogs, in that she claimed the dogs were strays and abandoned them to the officers, she alleges that subjectively, she did not intend abandon them. Dkt. No. 20 at 5. Specifically, she states that she only "temporarily agreed" to abandon the dogs with the expectation that they would be taken to the dog pound until she could "figure out what to do." *Id*. However, Plaintiff Shelton does not allege that this expectation was expressed to Officer Hall and Officer Russell, nor does she allege that the parties agreed to such an arrangement.[1] Pursuant to the Second Amended Complaint and the officer

---

[1] The Court notes that the Second Amended Complaint alleges that Plaintiff Jennings and Officer Hall discussed Plaintiff Jennings' wishes that the dogs be taken to a pound in Pryor, Oklahoma. Dkt. No. 20 at 5. However, as discussed *supra*, the Second Amended Complaint makes clear that Plaintiff Jennings had no ownership interest in Sancho and Zeke. Further, the Second Amended

report, Plaintiff Shelton explicitly abandoned Sancho and Zeke. *Id.*; Dkt. No. 22-1 at 8 ("[Mayor Williams] ask[ed] [Plaintiff] Shelton if she wanted the dogs declared as strays, at that time [Plaintiff] Shelton stated yes and wanted them declared as strays."). Defendants were entitled to take Plaintiff Shelton at her word: she was abandoning the dogs. *See Denny*, 441 F.3d at 1228. In light of her affirmative denial of ownership, any subjective intent Plaintiff Shelton might have had at the time is of no consequence. For this reason, this argument fails.

Plaintiffs next argue that Plaintiff Shelton's abandonment was involuntary because she was forced to do so "under threat of unwarranted and illegally issued charges. . . ." Dkt. No. 20 at 5. Police pursuit or investigation at the time of abandonment of property, without more, does not of itself render abandonment involuntary. *Hernandez*, 7 F.3d at 947. However, an abandonment is involuntary when it is the result of an earlier Fourth Amendment violation. *United States v. Garzon*, 119 F.3d 1446, 1451 (10th Cir. 1997); *United States v. King*, 990 F.2d 1552 (10th Cir. 1993). Stated differently, a person's abandonment of property in response to an unlawful police order is not voluntary. *United States v. Garzon*, 119 F.3d 1446 (10th Cir. 1997).

Here, Plaintiffs argue that Plaintiff Shelton's abandonment was not voluntary because it was in response to Officer Hall and Officer Russell's unlawful threat to ticket her for her dogs being at large. However, the Second Amended Complaint sets forth that Sancho and Zeke were, in fact, at large. *See* Dkt. No. 20 at 5 ("Officers Hall and Russell were in her front yard . . . Sancho and Zeke were present."). Further, the police report indicates that the Locust Grove Police Department received a call complaining of dogs at large and, when Officer Russell appeared at the scene, Sancho and Zeke were in Plaintiff Shelton's neighbor's yard. *See* Dkt. No. 22-1 at 6 ("I am

---

Complaint does not allege that Plaintiff Shelton's statements to officers regarding her abandonment of the dogs were conditional or anything less than unequivocal.

9

familiar with these dogs due to them being reported at large on multiple occasions."). Therefore, Plaintiffs allegations that Plaintiff Shelton was "threat[ened with] unwarranted and illegally issued charges," appear to be no more than labels and conclusions and, therefore, this argument also fails.

Because Plaintiff Shelton abandoned Sancho and Zeke prior to their taking, she lacks standing to assert the claims in the Second Amended Complaint.[2] For this reason, the Court finds that Plaintiff Shelton has failed to state a claim under any theory of relief in the Second Amended Complaint and the Motion is also granted as to Plaintiff Shelton.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss [Dkt. No. 22] is GRANTED and this action is DISMISSED WITHOUT PREJUDICE.

Dated this 11th day of June 2024.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[2] The Court wants to make clear that its ruling in no way endorses or condones what happened to Sancho and Zeke. Rather, the Court's ruling decides the prerequisite issue of constitutional standing.